UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Clarence Thomas and<br>Eartha Thomas,<br><br>        Plaintiffs,<br>  vs.<br><br>Chief Fallou; Officer Bird; and<br>Officer Herlong,<br><br>        Defendant. | Civil Action No.: 5:06-2743-RBH<br><br><br><br>**O R D E R** |

Pending before the Court is [14] motion by the defendants for summary judgment.[1] This is a Section 1983 action based upon alleged unlawful seizure under the Fourth Amendment and state law claims for false arrest and assault. Plaintiff filed a response to the motion on July 20, 2007. Defendants filed a Reply on July 30, 2007.

**FACTS**

In the early morning hours of January 1, 2006, around 1:15 a.m., plaintiff Eartha Thomas was driving her vehicle in the town of North, South Carolina. Unknown to the officers, she was returning from watch night church services which she had attended that evening. Officer Mark Fallaw, Chief of Police of the North Police Department, observed her vehicle going off of the right side of the road. According to the plaintiff's affidavit, she "went off to the side of the road to avoid the debris in the road." According to the affidavit of Officer Fallaw, since his police vehicle did not have a video camera, which would be needed in the event this was a situation involving a driver impaired by alcohol,

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."

1

he instructed officer A. Keith Faulk to stop the vehicle. Officer Faulk's vehicle had a video camera and the video of the traffic stop by the officers has been submitted to and reviewed by this Court. Officer Faulk pulled up behind the plaintiff's vehicle and turned on his blue lights, siren, and spotlight. Officer Robert M. Herlong heard the report of a violation consistent with driving under the influence and joined in as the back-up officer.

Plaintiff did not increase her speed and remained within the posted speed limit. However, she did not acknowledge the officer's presence and proceeded to turn off the highway onto Parkwood Avenue and then continued approximately another mile or so until she turned into the driveway of her home. (Affidavit of Officer A. Keith Faulk, ¶ 16). The video reflects that Mrs. Thomas continued to drive for about two minutes before she pulled into her yard. She stopped in front of her mobile home, got out of her vehicle, and asked why the officers were following her. Plaintiff states that, as she exited her car, the police asked her to put her hands up. (Plaintiff's Depo., p. 16). Officer Herlong's affidavit states that he thought Plaintiff had something in her hands and so he asked her to "step back to her car". (¶ 21 of Herlong affidavit).

A man later identified as Thomas' husband, plaintiff Clarence Thomas, came out of the home and began to yell at the officers. He began to show hostility[2] toward the officers and began coming down the steps toward them. Another officer, Kenneth L. Bird, arrived to assist the other officers and asked plaintiff Clarence Thomas to step back into the house, but he refused to do so. Chief Fallaw then arrived. After discussing the situation with Chief Fallaw and Officer Herlong, Officer Bird again asked Mr. Thomas to step back into the house.[3] Finally, after his wife requested that he go inside, he did so.

---

[2] Mr. Thomas admitted in his deposition that "I had gotten heated in there." (Depo., p. 8).

[3] Mr. Thomas quoted officer Herlong as saying, "Sir, go back in the house." (Clarence Thomas Depo., p. 10).

2

Mr. Thomas testified that the officers should have known that she was his wife, "as many times as he done stopped me and I had to come up on him, you know, he should have known." (Clarence Thomas depo., p. 8). Mrs. Thomas admits in her deposition that the officers did not draw their weapons at her husband but that they had their hands on their weapons. Also, Mr. Thomas admits that the police unstrapped their weapons but did not draw them. (Clarence Thomas Depo., p. 11). The video reflects that Mr. Thomas was able to observe his wife and the officers from behind a storm door. The video also shows no threatening actions by the officers. Mrs. Thomas indicated that the officers were in her yard about 15 minutes. (Plaintiff's depo., p., 29). Officers Faulk and Herlong explained to Mrs. Thomas why they had initiated the traffic stop and the importance of stopping for blue lights. She showed no signs of being intoxicated and stated that she did not stop for the blue light because she did not believe that she had done anything wrong and she was afraid that the cars were not really police cars. Therefore, the officers chose not to arrest or ticket her with any offenses, including failure to stop for a blue light or lacking proof of insurance.

### **Legal Standard on Motion for Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere

3

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.,* quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In this case, the defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Commrs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *Id*. and *Doyle v. Sentry, Insurance Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits (*see* Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Baber*, 977 F.2d 872, citing *Celotex Corp.*, *supra*.

### Discussion

***42 U.S.C. § 1983* claim based on the Fourth Amendment**

The Fourth Amendment guarantees "the right of the people to be secure in their persons [and] houses against unreasonable searches and seizures." A Fourth Amendment "seizure" takes place "when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006), citing *Kaupp v. Texas*, 538

4

U.S. 626, 629 (2003). In the case at bar, a Fourth Amendment seizure did occur. However, the Fourth Amendment only proscribes "unreasonable" searches and seizures. "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Id*., citing *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," or "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1,7 (1989). "As long as the officer has a reasonable suspicion that even a minor traffic offense has occurred or is occurring, the stop of the vehicle is constitutionally permissible." *Wallace v. Johnson*, No. 9:05-cv-2950, 2007 WL 1068477 (D.S.C. March 30, 2007). Whether there is "reasonable suspicion" depends on the totality of the circumstances, including the information known by the officer and reasonable inferences to be drawn therefrom. *United States v. Arvizu,* 544 U.S. 266 (2002).

"Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). In addition, a police officer may take such steps as are reasonably necessary to protect his personal safety during a *Terry* stop. *Foote v. Dunagan*, 33 F.3d 445 (4th Cir. 1994).[4]

"As a general rule, after initial questioning, any further detention or search is reasonable for Fourth Amendment purposes only if it is 'based on consent or [on] probable cause [for arrest]. An

---

[4] In *Foote*, the Fourth Circuit found that probable cause was not required to justify an officer's decision to actually draw a weapon during a *Terry* stop under the factual circumstances of the case. 33 F.3d at 448.

5

officer has probable cause for arrest if the facts known to him at the time would warrant the belief of a prudent person that the arrestee had committed or was committing a crime." *Figg v. Schroeder*, 312 F.3d 625, 636 (4th Cir. 2002)(internal citations omitted). A *Terry* stop must last no longer than is necessary to effectuate the purpose for the stop. *United States v. Boone*, 245 F.3d 352 (4th Cir. 2001). The reasonableness of the length of a *Terry* stop depends upon the circumstances of the case. *United States v. Robinson*, 221 Fed. Appx. 236, 2007 WL 869159 (4th Cir. March 22, 2007)(unpublished). "Though an investigatory stop should be brief, *Terry* imposes no rigid time limitation. The stop is permissible if 'the police diligently pursue a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it is necessary to detain the defendant." *United States v. Stallworth*, 117 F.3d 1415, 1997 WL 381965, at *2 (4th Cir. July 11,1997)(unpublished).

Based upon the undisputed facts in the case at bar, the plaintiff swerved while driving after midnight in the wee hours of the morning on New Years Day, during a time when many alcohol-related traffic offenses occur. This would give the officers reasonable suspicion to stop the vehicle. After she failed to stop for the blue light, the officers would then have probable cause to believe that a violation of the law had occurred and was occurring. During the stop, the officers had legitimate concerns for their safety based on the hostility of Mr. Thomas. Therefore, it was reasonable for them to unstrap their guns for their personal safety.[5] By the testimony of Mrs. Thomas, she was detained in her yard for about fifteen minutes which was not unreasonable.

Plaintiff contends that the stop was pretextual and was actually based upon some animus against her church. She bases this argument upon an unsigned letter dated well over a year prior to the incident in the case at bar from Chief Fallow of the North Police Department to the minister of the

---

[5] The officers state in their affidavits that they did not unstrap their weapons.

plaintiff's church, Saint Dorcas Baptist Church. (*See* letter dated August 24, 2004 attached to the plaintiff's response to the motion for summary judgment, Docket Entry #21-8.) The letter indicates that the police department had set up several traffic checkpoints after complaints from citizens and that one of these checkpoints was near the church. It further indicates that "approximately fifteen minutes into the checkpoint, it was apparent that persons began leaving the church" and that the officers became overwhelmed with the number of vehicles passing through the checkpoint when leaving the church. He then instructed the officers to suspend the checkpoint until the church traffic subsided. He apologized for any inconvenience to the church.

In *United States v. Hassan El*, 5 F.3d 726 (4th Cir. 1993), the Fourth Circuit rejected the argument that a defendant could assert that a vehicle stop for a minor traffic violation was "pretextual" on the basis that a reasonable officer would not have made the stop without other suspicions or investigative purposes. The Court adopted an objective test that, as long as the officer has an objective right to stop a vehicle, regardless of his subjective motivation, the evidence seized will not be suppressed on the basis that the stop was pretextual. *See also*, *Ohio v. Robinette*, 519 U.S. 33, 35 (1996).

Therefore, although the letter also may lack relevance based on its remoteness in time, the Court finds that it is not relevant to create an issue of fact regarding the constitutionality of the stop in this case. In the case at bar, the officers had an objective right to stop the vehicle due to the fact the driver swerved and under the circumstances of the date and time of the stop. There was an even stronger objective right to stop her when she failed to stop for the blue light and siren.

*False Arrest*

Defendants assert that their motion for summary judgment should be granted on the basis that Plaintiffs were never arrested or ticketed and that they were never deprived of their freedom of

movement. In addition, they assert that any restraint was lawful.

"In order to establish a cause of action, the evidence must prove: (1) that the defendant restrained the plaintiff; (2) that the restraint was intentional; and (3) that the restraint was unlawful." *Roberts v. City of Forest Acres*, 902 F.Supp. 662, 671 (D.S.C. 1995), citing *Andrews v. Piedmont Air Lines,* 297 S.C. 367, 371, 377 S.E.2d 127, 130 (S.C. Ct. App.1989). While it appears for summary judgment purposes that plaintiffs have shown an intentional restraint, the plaintiffs have failed to show that the restraint was unlawful. As to Mrs. Thomas, the seizure was reasonable in that the officer's "action was justified at its inception" and was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). As to Mr. Thomas, the seizure was lawful in that officers are allowed to "take such steps as [are] reasonably necessary to protect their personal safety . . ." *United States v. Hensley*, 469 U.S. 221, 235 (1985).

*Assault*

Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." *Roberts*, 902 F.Supp. at 671, citing *Gathers v. Harris Teeter Supermarket, Inc.,* 282 S.C. 220, 317 S.E.2d 748 (Ct. App. 1984). Based upon the arguments contained in Plaintiffs' Response to the Motion for Summary Judgment, the assault cause of action pertains only to Mr. Thomas. Mrs. Thomas was asked if she saw any of the defendants draw their weapons at her husband. She responded "not exactly",but that she was not concentrating on any of the officers besides the one questioning her. (Thomas depo., pp. 19,29). When Mr. Thomas was asked if the Defendants reached for their guns, he said "they unstrapped them," but when asked if they ever actually drew their guns, he answered "no." Mr. Thomas depo., pp. 10-11). "Although a law enforcement officer is privileged to use lawful force, he is nevertheless liable for assault if he uses force greater than is reasonably necessary under the circumstances." *Moody v. Ferguson*, 732 F.Supp. 627, 632 (D.S.C. 1989).

In this case, even if the officers unstrapped their guns, as Mr. Thomas claims, the act would be privileged and "reasonable minds could not disagree" that the force used was not unreasonable so as to justify a claim for assault. *See Johnson v. City of Aiken*, 217 F.3d 839, 2000 WL 263823 at *15 (4th Cir. March 9, 2000)(unpublished). The situation at the scene in the case at bar was getting heated and in order to protect everyone there, the officers had the privilege to use lawful force. The act of simply unsnapping their holsters would be justified lawful force under the circumstances. Therefore, the elements of assault are not met.

## Conclusion

For the foregoing reasons, the undersigned **GRANTS** the defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Court Judge

March 25, 2008  
Florence, South Carolina